# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

*UNITED STATES OF AMERICA*

*v.*                                              ELECTRONIC CRIMINAL COMPLAINT

*JACOB STATON and WILLIAM SPENCER*    CASE NUMBER: 19-04146 MJ-001-PCF-CDB

I, the undersigned, state under oath that the following is true and correct to the best of my knowledge and belief:

## COUNT 1

On or about February 13, 2019, in the District of Arizona, within the Grand Canyon Parashant National Monument, Grand Wash Cliffs Wilderness Area, the defendants, JACOB STATON and WILLIAM SPENCER, did willfully injure and commit a depredation against property of the United States, in that the defendants shot and damaged a gate, lock, and chain to a locked gate at the north gate of the Grand Wash Cliffs wilderness area trailhead, and the resulting damage did not exceed the sum of $1,000.00, in violation of Title 18, United States Code, Sections 2 & 1361.

## COUNT 2

On or about February 13, 2019, in the District of Arizona, within the Grand Canyon Parashant National Monument, Grand Wash Cliffs Wilderness Area, the defendants, JACOB STATON and WILLIAM SPENCER, did unlawfully use a motor vehicle in a wilderness area, in violation of Title 43, Code of Federal Regulations, Sections 6302.20(d) & 6302.20(a) and Title 18, United States Code, Section 2.

I further state that I am a Law Enforcement Officer of the Bureau of Land Management, and that this Complaint is based on the following facts: **SEE ATTACHED AFFIDAVIT.**

REVIEWED BY: */s AUSA Paul Stearns*

_X_ Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct.

Jason R. Bulkley, Ranger, BLM
Complainant's Name and Title

Complainant's Signature     6/10/19
                            Date

_X_ Sworn by Telephone

June 10, 2019 @ 10:49am
Date/Time

Flagstaff, Arizona
City and State

Camille D. Bibles, U.S. Magistrate Judge
Name & Title of Judicial Office

Camille D. Bibles
Signature of Judicial Officer

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

## ELECTRONICALLY SUBMITTED AFFIDAVIT

I, BLM Ranger Jason R. Bulkley, state under oath as follows:

1. I am employed by the Bureau of Land Management (BLM) as a sworn law enforcement officer (i.e., a ranger), and I am currently assigned to the Arizona Strip District of Arizona. I have over 22 years of investigative experience. I have worked as a BLM ranger for over seven years and a federal Law enforcement officer for over 13 years. In 2008, I attended the Land Management Police training program at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. In 2016, I attended the Department of the Interior investigator training program at FLETC. I also attended the seasonal Park Ranger Training Program at Northern Arizona University in 2006.

2. This affidavit is based on the investigation, observations, and experience of your affiant. Because this affidavit is being made to establish probable cause, your affiant has not listed every fact known regarding this investigation.

## Introduction

3. This affidavit is made in support of a Criminal Complaint against JACOB STATON and WILLIAM SPENCER regarding a wilderness incursion and gate destruction that occurred in the BLM administered lands on the Grand Canyon

1

Parashant National Monument (GCPNM) in the District of Arizona. The incident occurred on or about February 13, 2019 in the District of Arizona.

## Investigation

4. On February 17, 2019, at approximately 1600 hours, while patrolling BLM administered lands on the Grand Canyon Parashant National Monument (GCPNM) in the District of Arizona, National Park Service Officer Steve Edwards and I visited the Grand Wash Cliffs Wilderness (GWCW) area north trailhead. Upon arrival, I noticed that the gate was lying on the ground. As I approached the gate, it appeared that someone had driven over the gate after shooting off the lock and chain, shooting and destroying the hinges, and shooting the gate multiple times with multiple firearms.

5. Officer Edwards and I documented the scene and collected evidence. We then checked the game cameras that I had placed in the area and noted the following events from the photographs:

    a. On February 13, 2019, at approximately 1531 hours, a white pickup truck approached the gate from the south within the wilderness area. The truck was later identified as a white Toyota Tacoma, Utah license plate F250OBJ, which was registered to Jacob Staton out of Kanab, Utah.

    b. Two individuals – later identified as Jacob Staton and William Spencer – exited the truck. They urinated and then got back in the truck and backed

2

up. Spencer was holding what appeared to be a beer can. (Staton later confirmed that Spencer was in fact holding a beer can.)

    c.    Spencer approached the gate with a handgun strapped to his hip and inspected the hinge side of the gate.

    d.    Staton then approached the gate with a handgun in his right hand. Both Staton and Spencer appeared to inspect the hinge side of the gate.

    e.    Both Staton and Spencer backed up. Staton appeared to shoot the hinge side of the gate with a handgun.

    f.    After what appeared to be several shots, both Staton and Spencer re-approached the hinge side of the gate and they appeared to inspect the gate.

    g.    Both Staton and Spencer then backed up. Spencer then removed the handgun from his holster and shot at the gate.

    h.    After what appeared to be several shots, Spencer approached the gate and inspected it.

    i.    Spencer then backed off and several minutes later re-approached the locked side of the gate and inspected it. After a short time, he carried off the chain that was used to secure the gate.

    j.    Several minutes later both individuals returned to the gate, with Staton carrying a long-gun (which was later identified as a Remington Model 700, .270 caliber rifle, Serial #RR06198F). They inspected the gate, and after a short time backed off again.

3

  k. After backing off again for a short time, the two men re-approached the gate and re-inspected the hinge side of the gate. Staton was still carrying a rifle. Spencer then pushed the gate over.

 6. Based upon a review of the photographs from the game camera, Staton and Spencer spent approximately 12 minutes at the gate, from approximately 1531 hours to 1543 hours. The game camera captured 114 photographs of the event.

 7. Officer Edwards and I collected thirteen .45-caliber ammunition casings and five .22-caliber magnum ammunition casings at the scene. We also documented at least four different sized bullet holes in the gate, post, and hinge.

 8. On April 23, 2019, BLM Officer John Sims and I attempted contact with Jacob Staton at his home in Kanab, Utah, but no one was home. The white Toyota Tacoma was in the driveway, and it was the same vehicle depicted in the game camera photographs described above. I left my card with a note for Staton to call me.

 9. On April 28, 2019, I called Staton and told him that I was investigating damage to a gate in the GWCW area, and that he was implicated in the incident. Staton denied driving through the wilderness or shooting at the gate, but said he and a friend, Will Spencer, had been hunting coyotes and shed horn hunting near the Grand Gulch mine with their families. I told Staton that I had pictures of him and Spencer. Staton said that it was not him in the photographs. I asked if he would be willing to sign an affidavit stating that it was not him, and he said yes. I told him I

thought he was lying and that it would be much better if he were completely honest. I told him that I wanted to meet with him to see if we could clear up the incident. He said he was away at work, but would be home in a few weeks. I told him I would try to call him when he got back in town to set up a meeting. I also told him if he changed his mind about his statement, or if he remembered that he was involved, he could call me at any time.

10. On April 29, 2019, I received a message from Staton asking me to call him. I called Staton, and he told me his work schedule had just changed and that he would be available the following week. Staton told me that he was worried about driving through the wilderness and what the consequences would be. Staton said that he did not shoot the gate, but that he had driven through the wilderness area. I stressed the importance of being honest. Staton said again that he was worried about the consequences of driving through the wilderness area, as he had recently seen a case where someone was given a large fine and banned from BLM managed lands. I asked Staton if he had Spencer's phone number, and Staton said that he did not want to get Spencer. Staton then said that he had shot the gate. I arranged an in-person meeting with him for May 3, 2019 at his home in Kanab.

11. On May 3, 2019, at 1000 hours, BLM Officer Mike Zirwas and I met with Staton at his home in Kanab, Utah. I explained that I had a few questions and if he would make a voluntary statement regarding the gate. I asked Staton how they got through the south gate to drive into the wilderness area, and he said it was

5

unlocked. Staton then said that he made a bad decision to shoot the north gate. Staton said that he shot the lock and the hinges off and that the gate fell over. I told Staton that we found three different caliber casings and asked him if they had shot it with multiple guns. Staton said that he had only shot it with a .270-caliber rifle and that no other guns were used in the incident. I asked Staton if he knew what happened to the chain securing the gate, and he said that it should still be there and that he did not take it. I then told Staton that we had found some beer cans at the scene, and I asked him if they were drinking alcohol at the time they shot the gate. Staton said yes they had been drinking beer there. I then gave Staton the statement form and asked if I could see the rifle he used. Staton led us into his house and showed us the rifle. I took pictures of the rifle and asked him again if he had used a handgun to shoot the gate. Staton said that he had had a .45-caliber handgun with him at the time, but that he did not remember shooting it at the gate.

12.  On May 3, 2019, at approximately 1515 hours, I spoke with William Spencer on the phone and informed him that I was investigating the destruction of a gate in the Grand Wash Cliffs wilderness area and that he was implicated in the act. Spencer admitted to being present with Staton at the time, but denied having shot the gate, pushing it down, or taking the chain securing the gate. Spencer said he had talked to Staton about the incident. Spencer said that he had no involvement in the incident. I asked Spencer several more questions regarding the incident, and he denied several any involvement in the incident several more times. I told him it was

also a crime to lie to a federal officer, and Spencer said he knew that but he was not lying. We concluded the conversation and I told him that if he wanted to change his story, he had my telephone number and could call me at any time.

13. Based on my training and experience, the damage to the gate, chain, and lock – all which are and were property of the United States – did not exceed the sum of $1,000.00. The area that Staton and Spencer entered after damaging and opening the gate described above was and is a wilderness area managed by the BLM.

## Conclusion

14. Based on the foregoing, your affiant respectfully submits that there is probable cause to support violations of federal law by JACOB STATON and WILLIAM SPENCER.

**Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.**

_____          6/10/19
Jason R. Bulkley, Ranger, BLM                     Date

__X__ Sworn by Telephone

Date/Time: ___June 10, 2019 @ 10:49am___


_____
Camille D. Bibles
United States Magistrate Judge

7